2013 UT App 37

# THE UTAH COURT OF APPEALS

CHRISTINE HELFRICH AND MARY ANNE CHESAREK,

*Plaintiffs and Appellants,*

*v.*

LUKE L. ADAMS,

*Defendant and Appellee.*

Opinion
No. 20110459-CA
Filed February 22, 2013

Second District, Farmington Department
The Honorable John R. Morris
No. 070700508

David B. Stevenson and Ryan B. Wilkinson, Attorneys for
Appellants

T. Richard Davis, Thomas B. Price, and Benjamin P. Harmon,
Attorneys for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion,
in which WILLIAM A. THORNE JR.
and J. FREDERIC VOROS JR. concurred.

DAVIS, Judge:

¶1     Christine B. Helfrich and Mary Anne Chesarek, on behalf of
Carmen R. Finan's estate and trust (collectively, Plaintiffs), appeal
the trial court's grant of summary judgment in favor of Luke L.
Adams. We affirm.

BACKGROUND

¶2      Finan, Adams, and Frankie A. Emley are siblings who inherited property from their mother. Because the value of the property Adams inherited exceeded that of the property his sisters inherited, he agreed to sign a promissory note (the Note) granting each of them a one-half interest in $26,340,[1] to be secured by the property Adams had inherited. The Note provided that if the property securing the Note was "sold, assigned, or transferred for any reason or in any manner, then the entire remaining balance of [the Note would be] immediately due and payable." It also provided that if Adams were to sell the property for greater than $129,942, he would pay Finan and Emley 20.27% of the sale price instead of the agreed-upon $26,340.

¶3      On January 22, 1999, Adams transferred the property, which had previously been in his name only, to himself and his wife as joint tenants via quitclaim deed (the 1999 transfer). The deed was recorded the same day. In January 2005, Adams and his wife transferred the property to themselves as trustees of the Luke L. Adams Trust and the Diana C. Adams Trust. Adams did not notify Finan of either transfer. On February 22, 2006, Emley died, bequeathing her interest in the Note to Adams. On or about November 21, 2006, Adams filed a Petition to Approve Payment of Promissory Note and Authorize Partial Distribution of Estate (the 2006 Petition) in the probate case relating to Emley's estate, in which he represented that the Note was not yet due and payable because there had been no "event of transfer" or other triggering event. Adams requested that he be permitted to pay Emley's portion of $26,340 to her estate—and ultimately to himself—in satisfaction of his obligation to Emley under the Note.

---

1. This amount represented 20.27% of the property's $129,942 market value at the time the Note was signed. According to Plaintiffs, the property now appraises at $1,250,000.

¶4   Finan learned of the transfers sometime after Emley's death in February 2006 and filed suit against Adams on September 14, 2007, more than eight and a half years after the 1999 transfer. Finan alleged that Adams was in breach of the terms of the Note for failure to pay the sum due to her at the time of the transfer. Finan died in September 2009, and Finan's daughters, Plaintiffs, were substituted as plaintiffs in May 2010. Plaintiffs filed a motion for summary judgment on July 30, 2010, and Adams filed a cross-motion for summary judgment on August 16, 2010. The trial court granted Adams's motion, ruling that the statute of limitations had run on Plaintiffs' claims. Specifically, the court determined that the statute of limitations began running on January 22, 1999, the date the property was transferred to Adams and his wife as joint tenants, and that Finan's filing of the action on September 14, 2007, was therefore untimely under the applicable six-year statute of limitations, *see* Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012). The court further determined that the equitable discovery rule was inapplicable because the recorded deeds gave Finan constructive notice of the transfers, Adams did not conceal the transfers, and the case did not present exceptional circumstances that would justify tolling the statute of limitations.

¶5   Plaintiffs filed a timely notice of appeal from the trial court's summary judgment ruling. Subsequently, Plaintiffs discovered the 2006 Petition and filed a rule 60(b) motion for relief from the summary judgment order, arguing that Adams's misleading statements in the 2006 Petition, which represented that the Note was not yet due and payable and that no transfer had been made, justified tolling the statute of limitations under the equitable discovery rule. The trial court denied the motion, and Plaintiffs contest this ruling as well.

ISSUES AND STANDARDS OF REVIEW

¶6   Plaintiffs assert that the trial court erred in granting Adams's motion for summary judgment and denying Plaintiffs'. "This Court

reviews a trial court's entry of summary judgment for correctness and gives its conclusions of law no deference." *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 3, 980 P.2d 685. "Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.* (citing Utah R. Civ. P. 56(c)). Plaintiffs also challenge the trial court's denial of their rule 60(b) motion for relief from the summary judgment. "We review the trial court's denial of a motion to reconsider summary judgment under rule 60(b) of the Utah Rules of Civil Procedure for abuse of discretion." *Lund v. Hall*, 938 P.2d 285, 287 (Utah 1997).

ANALYSIS

¶7    Plaintiffs challenge several aspects of the trial court's summary judgment ruling. First, they argue that the trial court erred in employing Utah Code section 57-3-102(1) to determine that Finan had constructive notice of the transfer by virtue of Adams having recorded the quitclaim deed. Second, they assert that the trial court erred in determining that Adams did not conceal the transfer because there were disputed issues of material fact relating to that issue. In connection with this argument, they also contest the trial court's denial of their motion for rule 60(b) relief, which was premised on newly-discovered evidence that allegedly demonstrated Adams's misleading conduct. Finally, they maintain that exceptional circumstances justify applying the equitable discovery rule to toll the statute of limitations in this case. In the alternative, they assert that the 1999 transfer was not a valid triggering event that made the note due and payable and that the trial court therefore erred in determining that the statute of limitations began running as of that date. Because the running of the statute of limitations must be established before it becomes necessary to consider the applicability of the equitable discovery rule, we address Appellant's alternative argument as a threshold matter before considering the other issues on appeal.

## I. The 1999 Transfer Triggered the Running of the Statute of Limitations.

¶8     The applicable statute of limitations in this case is six years. *See* Utah Code Ann. § 78B-2-309(2). "In a breach of contract action the statute of limitations ordinarily begins to run when the breach occurs." *Butcher v. Gilroy*, 744 P.2d 311, 313 (Utah Ct. App. 1987). Under the terms of the Note, "the entire remaining balance of [the Note] is immediately due and payable" "[i]n the event the title to the real property . . . securing [the] note is sold, assigned or transferred for any reason or in any manner." Plaintiffs maintain that the 1999 transfer "was not the type of transfer contemplated that would trigger default." However, we fail to see how the quitclaim deed transferring the property from Adams to Adams and his wife would not fall under the category of a transfer "for any reason or in any manner." Thus, according to the Note's plain language, Adams was in breach when he failed to pay Finan immediately following the 1999 transfer, and the statute of limitations began to run as of that date.

## II. The Equitable Discovery Rule Does Not Apply.

¶9     Plaintiffs next contend that the trial court erred in declining to apply the equitable discovery rule. There are two circumstances where the "equitable discovery rule may operate to toll an otherwise fixed statute of limitations period":

> (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741 (citation and internal quotation marks omitted). However, "before

a statute of limitations may be tolled under [the equitable discovery rule], the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128.

A. Constructive Notice

¶10    Utah Code section 57-3-102 provides that documents completed in accordance with Title 57, "from the time of recording with the appropriate county recorder, impart notice to all persons of their contents." Utah Code Ann. § 57-3-102(1) (LexisNexis 2010). Thus, because the transfers were recorded at the time they occurred, the trial court determined that Finan had constructive notice long before the statute of limitations expired. Plaintiffs contest this determination, asserting that section 57-3-102 should be interpreted as applying only to individuals with a prospective interest in property, not those with an existing interest, because it would be unreasonable to require individuals with an existing interest to continually check the property records in order to protect their interest.

¶11    We acknowledge that "[i]n general, Utah law does not require one to inspect the public record to verify the truthfulness of statements made to him or her," *Timothy v. Keetch*, 2011 UT App 104, ¶ 12, 251 P.3d 848, and that the constructive notice provided by recording will therefore not necessarily defeat a fraud claim, *Christensen v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 307 (Utah 1983). However, we are aware of no authority, and Plaintiffs have cited none, suggesting that this rule applies outside of the fraud context.[2]

---

2. Had Finan's lack of actual knowledge been the result of affirmative concealment or misleading behavior on Adams's part—e.g., had Finan asked Adams about the status of the property

(continued...)

¶12    Nor do we think it absurd to require an individual with an interest in property to take reasonable steps to periodically confirm the continuing viability of that interest. *See generally Russell Packard*, 2005 UT 14, ¶ 26 (explaining that the concealment version of the equitable discovery rule "requires an evaluation of the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct"). Such reasonable steps need not even necessarily require a search of the property records. Finan could have simply asked her brother whether he had taken any action that might affect her interest in the property. *See generally Timothy*, 2011 UT App 104, ¶ 12 ("Utah law does not require one to inspect the public record to verify the truthfulness of statements made to him or her."). Given that the transfers were a matter of public record, we agree with the trial court that Finan had constructive notice that the transfers had occurred and, through the exercise of reasonable diligence, could have discovered her claims within the limitations period.

¶13    In any event, we are not convinced that the equitable discovery rule would apply in this case even if Finan did not have constructive notice of the transfers. "Mere ignorance of the existence of a cause of action will neither prevent the running of the statute of limitations nor excuse a plaintiff's failure to file a claim within the relevant statutory period." *Russell Packard*, 2005 UT 14, ¶ 20. Thus, even assuming that Finan neither knew nor should have known of her claims prior to the running of the statute of limitations, she would have to establish either that Adams prevented her from discovering the transfers by "concealment or

---

2. (...continued)
and had he falsely represented to her that the property had not been transferred—then the equitable discovery rule might apply, despite the constructive notice provided by the recording. However, as discussed further *infra* ¶ 15, Plaintiffs have presented no evidence tending to suggest that Adams made any attempt to conceal the transfer.

misleading conduct" or that exceptional circumstances would make it unjust to enforce the statute of limitations. *See id.* ¶ 25 (citation and internal quotation marks omitted).

B. Concealment

¶14    In order to successfully toll the statute of limitations under the concealment branch of the equitable discovery rule, Plaintiffs must demonstrate that Finan did "not become aware of the cause of action *because* of [Adams's] concealment or misleading conduct." *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741 (emphasis added). Thus, even accepting Plaintiffs' assertion that Finan was neither actually nor constructively aware of the transfers, in order to defeat summary judgment, they must have produced at least some evidence that Adams concealed the transfers or engaged in misleading conduct that prevented Finan from learning of the transfers.

¶15    In support of their summary judgment motion, Plaintiffs argued "that [Adams's] failure to provide any notice to his sister of the transfers he made to his wife and later to his trust amounted to concealment under the circumstances." The trial court declined to recognize Adams's failure to inform Finan of the transfers as the type of "concealment or misleading conduct" contemplated by the equitable discovery rule, *see id.*, and determined that Plaintiffs had "not submitted any competent evidence to create a genuine issue of material fact as to whether [Adams's] conduct was misleading." Plaintiffs renew this argument only cursorily in their brief and point us to no authority in support of the position that failure to inform rises to the level of concealment. *Cf. First Sec. Bank of Utah NA v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (explaining that failure to disclose is not fraudulent unless a fiduciary relationship exists, which requires "not only confidence of the one in the other, but . . . [also] a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other" (citation and internal

quotation marks omitted)). We therefore decline to address this argument further, *see generally State v. Crabb*, 2011 UT App 440, ¶ 5, 268 P.3d 193 (per curiam) ("It is well established that appellate courts need not address arguments that are inadequately briefed."), and determine that, based on the undisputed facts presented to the trial court on summary judgment, the concealment branch of the equitable discovery rule does not apply to toll the statute of limitations in this case.

¶16    Plaintiffs nevertheless assert that even if summary judgment was appropriate on the facts presented at the time of the summary judgment hearing, the trial court should have granted their rule 60(b) motion to set aside its summary judgment ruling based on the newly-discovered 2006 Petition, which contained Adams's false statements that as of 2006, the Note was not due and payable and no transfer had been made. *See generally* Utah R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . ."). However, we agree with the trial court that this evidence would have made no difference to the outcome of its summary judgment ruling because even assuming that the statements actually misled Finan as to the existence of a cause of action, they were not made until after the statute of limitations had expired in January 2005. Thus, Adams's statements in the 2006 Petition could not have impacted Finan's ability to discover and pursue her claims within the limitations period.

## C. Exceptional Circumstances

¶17    Plaintiffs next assert that this case presents exceptional circumstances because by transferring the Property, Adams improperly denied Finan her rightful share of the inherited property by surreptitiously triggering the statute of limitations and letting it run without informing Finan. Plaintiffs also rely on

"expectations of honesty among family members and the value of the property at stake" in support of their argument that exceptional circumstances exist.

¶18    "The ultimate determination of whether a case presents exceptional circumstances is a question of law and turns on a balancing test" that "examines [t]he hardship the statute of limitations would impose on the plaintiff . . . [against] any prejudice to the defendant from difficulties of proof caused by the passage of time." *Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128 (alterations and omission in original) (citations and internal quotation marks omitted). The trial court concluded that "Finan [had] ample time to evaluate and assert her claims" and "that the passage of time and [Plaintiffs'] aged causes of action will create difficulties and prejudice to [Adams], as title to the subject property transferred a second time after the 1999 transfer and Ms. Finan cannot be called to testify as a witness." We agree that this case does not present exceptional circumstances. The "expectations of honesty among family members" do not make it reasonable for Finan to have made no inquiry whatsoever concerning her interest in the property over the course of at least the seven years between the 1999 transfer and the filing of the 2006 Petition. Furthermore Adams was not obligated to inform Finan of the transfers, *see supra* ¶ 15. Thus, any hardship resulting from the regular application of the six-year statute of limitations could have been avoided by Finan's having exercised minimal diligence, and it does not outweigh the prejudice to Adams of defending against a stale claim.

## CONCLUSION

¶19    The trial court correctly determined that the statute of limitations began running as of the date of the 1999 transfer, that the recording of the transfers imparted constructive notice to Finan of their existence, that there was no genuine issue of material fact as to whether Adams concealed the transfers, and that exceptional

circumstances did not justify the tolling of the statute of limitations. Thus, the trial court correctly granted Adams's summary judgment motion. Further, the trial court did not abuse its discretion by denying Plaintiffs' rule 60(b) motion because the newly-discovered evidence was not material to the determination of whether Adams concealed the transfers during the relevant time period. Accordingly, we affirm.

————